Nash, C. J.
 

 "We see nothing in this case to induce the Court to interfere with the judgment below. When special instructions .are asked for on the trial of a cause, it is the duty of the Court to respond to them, either by adopting the prayer or refusing to do so. But in the former case it is not required that the charge should be given in the words of the prayer. It may be given in such language as is most appropriate to place the principle of law contained in the prayer clearly before the jury. He may refuse to charge as required, even where the instructions are proper in themselves, if those given are, in substance, the same, and correctly lay down the rule of law. In this case, we think his Honor, in response to each prayer, has laid down the law correctly.
 

 .To the first prayer, the case states the Court refused to give the instruction in the
 
 la/nguage
 
 prayed for. Ho then instructed the jury, that weakness of mind was not,
 
 of itself \
 
 a valid objection, as the law did not undertake to measure the size of a man’s intellect; that it did not require that he should be a wise man; that if he was between the wise and the foolish sort, although he inclined rather to the foolish, he was, in law, capable of making a last will and testament, &c.; that he must do it with understanding and reason, and if the jury should be satisfied that, at the time of executing the supposed will, William Marshall had not understanding and reason, they should find a verdict against the will; that if the supposed testator knew what he was doing at the time of making the supposed will, and that he was giving his property to the plaintiffs, and that they would be entitled to it, provided the forms of law were complied with, then they were to find in favor of tho will.” We are at a loss to perceive any error in this part of the charge; it correctly embodies the rule of law •••> it. etionóf i.o allegéd insanity of tho testator, md i; Mf/ nearly in tho ...nguagc of some of the most appro re<! writers on the subjoct.
 

 
 *204
 
 The response to the second prayer embodies the substance of it, though the Judge uses a different phraseology to express the principle, and winds up by telling the jury that the intelligence and integrity of each witness were matters for their consideration.
 

 The third prayer was properly refused. His Honor could not have charged the jury as required without violating his duty, as it would have invaded the province of the jury.
 

 The plaintiff then requested the Court to charge the jury, that the only influence which the law condemns, and which destroys the validity of a will, is a fraudulent influence, controlling the mind of the testator, so as to induce him to make a will which he otherwise would not have made.
 

 To this prayer the defendants’ counsel objected, upon the ground that he had not put the case upon the ground of undue influence of John M. Marshall over his father, but altogether on the want of mental capacity on the part of the supposed testator.
 

 The Court then asked the counsel of the defendants if they withdrew that part of their argument, in which the Court understood them to argue that the paper writing then before the Court was dictated by John M. Marshall.
 

 The counsel said they did not withdraw the argument they had made, because they considered it proper, in answer to the evidence offered by the plaintiff, to show that William Marshall, Sen’r., had dictated his will, and had assigned reasons to the defendants for making it as it was, and they still contended that such dictations and reasons
 
 may
 
 have been the suggestions of John M. Marshall, one of the principal legatees, who resided in the same house with the same testator, and assisted him to the door of the room in which he executed the paper writing now offered as his will.
 

 Ilis Honor then instructed tlie j ury as requested by the plaintiffs’ counsel.
 

 The reasons assigned Aw excepting, río ¿hé plaintiffs’ prayer _ {ire contradictory, ffhey first object because they had not put the case upon the ground of undue influence, but solely
 
 *205
 
 upon that of incapacity. “But,” said the Judge, “I understand you, in your argument, to take the ground that John M. Marshall had dictated the will.- If you will withdraw that argument I will not charge the jury as the plaintiffs’ counsel request.” They admit that the Judge understood them correctly and refuse to withdraw the argument, but insist that it was proper, in answer to the evidence of the .plaintiffs, that William Marshall had dictated the will and assigned his reasons; and they still contended that John M. Marshall
 
 may
 
 have dictated the will and assigned the réasons; for, he lived in the house with his father, and. had actually helped him to the door of the room where the paper was written. What is dictation, or to dictate ? Mr. Bayle says, “to dictate, is to tell another what to write; to indite ; to teach ; to show another something with authority; to declare with confidence,” and that a dictator “ is one whose credit or authority enables him to direct the opinion or conduct of another.” If John M. Marshall had such power and authority over his father as to be able to direct him how to make his will, and exerted that power to cause him to make a -will in which he is the principal legatee, it was, on his-part, the use of undue influence, and would destroy the will. But the reason assigned for the suggestion of the dictation of William Marshall is, that he lived in the house with his father, and assisted him to the door of the room where the paper was written. What effect such suggestions might have upon a jury the Court could not tell, it was, therefore, his duty to draw to their attention the difference between legal and illegal influence. In doing so, there is no error.
 

 In the course of the trial, a man by the name of Bordeaux was examined by the plaintiffs as to the general character of a Mrs. Balentine, a witness for the defendants, and he swore that, for truth and chastity, it was bad.
 

 The defendants then asked the witness, who he had heard say her character was bad for truth and chastity.- Upon objection being made, the question was ruled out. Mr. Phillips, in his first volume, 292, lays down, that in answer to such ev
 
 *206
 
 idence, tbe other party, on cross-examination, may enquire as to their
 
 means
 
 of knowing the general character of the witness assailed, and the grounds of their belief. There was error in the ruling of the Court on this point,
 
 (State
 
 v.
 
 Howard, 9
 
 New-Hampshire Rep. 475,) and for such error we should have awarded a
 
 venire de novo;
 
 but the plaintiff withdrew his objection and consented that the question should be put. The defendant refused to ask the question again. This waiver, on the part of the defendant, cured the error.
 

 Pee CubiaM. Judgment affirmed.