GATTIS v. KILGO.

(Filed October 28, 1902.)

EVIDENCE—*Incompetent—Withdrawal—Instructions—New Trial.*

> The permitting of the introduction of a mass of incompetent evidence (as in this case) and it not being withdrawn by the trial judge until after the argument of counsel on both sides is closed, is error for which a new trial will be granted.

ACTION by T. J. Gattis against John C. Kilgo and others, heard by Judge *Thos. J. Shaw* and a jury, at November Term, 1901, of the Superior Court of GRANVILLE County. From a judgment for the plaintiff, the defendants appealed.

*Boone, Bryant & Biggs, Guthrie & Guthrie, A. W. Graham,* and *A. A. Hicks,* for the plaintiff.

*Winston & Fuller, T. T. Hicks,* and *Royster & Hobgood,* for the defendants.

MONTGOMERY, J.   In the opinion of the Court delivered at the February Term, 1901, and published in 128 N. C., 402, it was said: "Whether or not the speech of the defendant Kilgo, published by the defendants in pamphlet form and embodied with the whole proceeding in the matter of the investigation, was a privileged communication (and it would have been more accurate to have said a privileged occasion), was a question of law, there having been no dispute or uncertainty as to the circumstances attending the publication, and his Honor properly tried the case as one of qualified privilege." In the new trial ordered in that opinion, it was anticipated that in that trial the question of malice in the defamatory publication would be the only matter before the trial Court. It was perfectly apparent to this Court, and it seemed to be equally so to his Honor who presided at the first trial of this

case, that from the plaintiff's evidence the investigation by the trustees of Trinity College of certain charges of incompetency and moral unfitness, made against its President, Dr. Kilgo, was a matter of justice to Dr. Kilgo and to the college, and that the college was in a sense a public institution; and therefore that the publication of the proceedings in the investigation by the college was a privileged occasion. From a careful reading of the statement of the case on the present appeal, it seems clear that the plaintiff's counsel acquiesced in that view of the opinion of this Court. The plaintiff himself, when upon the stand as a witness was asked by his counsel "Whether you were a witness before the Board of Trustees of Trinity College upon the investigation of the matter of the charges said to have been brought by Judge Clark against Dr. Kilgo," and we find nothing in the whole evidence tending to show that the meeting of the Board of Trustees was not properly called or was not properly constituted. The plaintiff also introduced in evidence a paper called a challenge of Judge Clark to the Board, in which challenge exception was made to certain individual members of the Board. But the regularity and authority of the Board were recognized in the last lines of the challenge, in these words: "As an act of justice to yourselves, to the college and to myself—an act of justice that no North Carolinian should ever seek in vain—I ask that the triers be polled, and that no one shall sit on this investigation who is not absolutely and altogether impartial and uncommitted by former deliberate expressions of his views." The manner, too, in which the plaintiff's counsel conducted the plaintiff's case shows that the counsel regarded the publication of the defamatory matter as an occasion of privilege. The plaintiff, in his complaint, did not allege any matters, or make any admission to the effect that the publication of the matter was a privileged occasion. The simple allegation of the complaint was that the publication had been made.

It was, therefore, incumbent on the defendants to show the privileged occasion. The plaintiff, however, was not satisfied to introduce evidence of the publication of the defamatory matter, and stop, which was all he was required to do upon the allegations of the complaint, and wait for his adversary to take up the burden of showing a qualified privilege. He went into matters showing the privileged occasion himself. And that can only be accounted for upon the supposition that he would have to meet that contention on the part of the defendants, when the defendants should have put in their evidence on that point, and that he, the plaintiff, had as well meet the matter *in limine.* But the counsel of the plaintiff, instead of being consistent in the matter of the introduction of evidence, and confining it to matters going to show malice in the publication, brought into the trial a vast pile of evidence inconsistent with their theory of the case and entirely incompetent if the occasion of the publication was privileged.

His Honor, however, in what he calls "Note Y," in the record, as distinguished from what he designates his charge, states that he, "in the admission of evidence of what transpired before the Board of Trustees upon the trial of Kilgo, the Court opened the door and permitted plaintiff to offer evidence of everything that happened there, to determine as to whether there was a trial there." As we have said, the plaintiff having alleged the publication by the defendants of matter which was and is libelous *per se,* and having introduced evidence of its publication, was entitled to judgment, if he had not shown by his own testimony an occasion of privilege in the publication of the defamatory matter, or unless the defendants had assumed the burden, and in their evidence had shown a privileged occasion in the publication of the matter.

But if his Honor, notwithstanding the manner in which the plaintiff's counsel conducted the case, felt it his duty to in-

vestigate the proceedings before the Board of Trustees of the College, to see whether there had been any trial, he should have admitted only such evidence under that head as pertained to the regularity and the integrity of the proceeding. That he did not do.. He allowed evidence to the effect that the meeting of the trustees was held with closed doors, that the stenographer was not sworn, that Judge Clark was refused a stenographer, that Judge Clark's challenge to the Board was rejected, that Mr. Jurney said, "I am a Kilgo man; I told the District Conference at Rockingham yesterday I was coming here to fight for Kilgo, that I should fight for him with my fingers and with my teeth, and when my teeth gave out, I would gum it for him"; that Judge Montgomery nodded and consulted with Dr. Kilgo, and referred him to Greenleaf on Evidence, and that Dr. Kilgo's conduct and behaviour when cross-examining the witnesses, including the plaintiff, were overbearing and offensive, and brutal to the plaintiff.

Especially should his Honor not have allowed as evidence that part of the challenge to the Board which is in these words: "I have been pronounced in my views against the illegality of trusts, and I have concurred with the resolutions of the Western North Carolina Conference against the sale and manufacture of cigarettes, and I stand here by the terms of your invitation in Benefactor's Parlor, Duke's Building, a room thus doubly labeled with the reminder of the cigarette business, the influence of whose vast accumulations is like the darkness of Egypt, in that it can not only be seen, but can be felt. This institution itself becomes a partner in that very business by being the holder of a large block of its stock, from which it derives no small part of its income."

His Honor also allowed a witness for the plaintiff to state that Dr. Kilgo, during the investigation, locked the door of the room against a correspondent of one of the daily papers

of the State; and another witness to state that just before the trial commenced, and as he got up to the building, in the shade on the grass, Mr. Oglesby and Dr. Kilgo were lying on their stomachs with their heads close together, and seemed to be in an interesting conversation.

How that evidence could be considered as going to show malice in the publication of the defamatory matter on the part of the defendant Kilgo, we can not see; but it was allowed also to be given in against defendants Odell and Duke.

His Honor erroneously admitted evidence as to special damages suffered by the plaintiff, and the loss of gross profits, and individual customers (sixth, seventh, eleventh, twelfth and thirteenth exceptions); also evidence of the church membership of Duke (fourteenth exception); also evidence that Oglesby, the prosecutor, lived in the parsonage of the Main Street Methodist Church, Durham (nineteenth exception), the plaintiff having been allowed to show that the defendant Duke belonged to that church; that the stenographer Newsome was the private secretary of Dr. Kilgo (twenty-seventh exception); that Oglesby was pastor of Main Street Church, Durham (thirty-fourth exception), the defendant Duke having been shown to be a member of that church; upon the character of the plaintiff as a minister of the Gospel (sixty-sixth exception); evidence that there was published in the *Morning Post* large number of supplements to that edition containing nothing but the speech of Dr. Kilgo, no evidence having been given as to the knowledge or consent of defendant to such publication (exceptions 76, 77, 78, 79, 80, 127, 128).

It must be remembered that the great question in the case was whether or not there was malice on the part of the defendants in the publication of the defamatory matter, for his Honor held as a matter of law that everything that occurred before the Board of Trustees was absolutely privileged, and he also told the jury that "If you believe the evidence in the

case, the publication complained of by the plaintiff was one of qualified privilege." His ruling of law is in these words: "At the close of the evidence, the Court, in the presence of the jury, ruled that it would hold as a matter of law that everything that occurred before the Board of Trustees in connection with the investigation of the charges, including the trial, was absolutely privileged, and could not be considered by the jury as any evidence of malice or the falsity of the publication, nor on the question of damages, and that the evidence as to the folders or supplements was ruled out." He had discovered then, *before* argument was commenced, that all that mass of damaging evidence that we have mentioned as having been admitted concerning the matters which had occurred before the Board of Trustees; but he allowed the argument to proceed and to be concluded upon the very matters which he had said to the counsel, in presence of the jury, should not be considered by the jury. After the argument on both sides was closed, his Honor undertook to withdraw from the consideration of the jury, not only the incompetent evidence concerning the investigation before the Board of Trustees which he allowed, but also the other objectionable evidence which we have above referred to. It may be best to quote the language of the Court in reference to the attempted withdrawal of the evidence:

It is as follows: "Note Y.—At the close of the argument and before charging the jury, his Honor stated to the jury as follows: The Court charges you that the pamphlet introduced by the plaintiff is not evidence to be considered by the jury in showing the falsity of the publication complained of for malice. The Court withdraws from your consideration, and instructs you that you must not consider in making up your verdict, or in any way in this case, any of the following evidence: The testimony of the plaintiff covered by the sixth exception, and that part of the seventh exception in brackets;

the evidence covered by the eleventh, twelfth, thirteenth and fourteenth exceptions, the nineteenth exception, the twenty-eighth exception and the thirty-fourth exception; also the evidence covered by the sixty-sixth exception, seventy-seventh, seventy-eighth and seventy-ninth exceptions, and the questions and answers between the seventy-seventh and seventy-ninth exceptions, and one question and answer before the seventy-seventh, and the three succeeding the seventy-ninth exception; also the evidence covered by the 127th and 128th exceptions, and the question and answer between those two.

"The questions and answers referred to in the foregoing exceptions, and the intervening questions and answers above referred to, were read to the jury.

"And the Court further stated to the jury as follows: In the admission of evidence of what transpired before the Board of Trustees upon the trial of Kilgo, the Court opened the door and permitted plaintiff to offer evidence of everything that happened there, to enable the Court to determine as to whether there was a trial there.

"And the Court charges you that nothing that occurred upon said trial is to be considered by the jury as evidence of malice against either one of the defendants in this case, and as to the evidence tending to show that the meeting was held with closed doors; the evidence as to the stenographer not being sworn, and the refusal to allow Judge Clark to have one, his challenge to the jury and the rejection of the same; what Jurney said, if anything, about 'gumming' it for Kilgo, and Judge Montgomery's 'nods' and consultation with Kilgo, and his reference to Greenleaf's Evidence, and Dr. Kilgo's conduct and behaviour in cross-examining witnesses, including the plaintiff, that he was imperious, overbearing, offensive and brutal to plaintiff in cross-examining him (except you may consider this, if true, in connection with the testimony of the plaintiff as to why he didn't answer questions asked), and that certain evidence was excluded upon said trial.

"As to all these matters, if they occurred, they were simply incidents of a trial, and all were under the control of the Board of Trustees, and are not to be considered by the jury in any respects, except as tending to show there was a trial being conducted before the Board of Trustees. They are not to be considered as evidence of the falsity or maliciousness of the publication, or on the question of damages.

"The evidence as to Kilgo and Oglesby lying on their abdomens under the shade of the trees, and of excluding newspaper correspondents, including Merritt, from the meeting, and closing the doors on him, does not have anything to do with the case, and is withdrawn from and must not be considered by the jury at all in passing upon any of the issues of this case, or in considering the case.) 54

"The defendants except to the manner and time of withdrawing evidence between 53 and 54 from the jury, and insist that when evidence is admitted and remains with the jury several days, it can not be withdrawn from the jury, as was done in this case, and assign such ruling and order of his Honor as error.    (Exception.)

"One hundred and thirty-second exception:

"The evidence in the case was taken down by a stenographer, and at the beginning of the argument very little of it had been transcribed by him, and the same was not completed until a short time before the Court began its charge. The evidence covered about eighty typewritten, single-spaced pages.    The defendants requested the Court to put its charge and every part of it in writing, and the Court had not completed the writing of its charge and the reading and consideration of the evidence and exceptions thereto when the argument was concluded, and the Court announced its rulings as to the exclusion of evidence, as hereinbefore set out, as soon as it could be done under the circumstances."

This case was being tried for several days.    Some of the

ablest lawyers in the State had appearances on either side, and the plaintiff's counsel were allowed in the argument to use a mass of evidence against the defendants totally incompetent, and calculated to arouse passion and prejudice against the defendants, and to obscure the real question at issue.

But the plaintiff's counsel, here, contended that, under our decisions, his Honor did what was allowable. They insisted that he simply corrected a slip in the admission of evidence. We have searched our Reports for cases bearing on the question of the right and power of the trial Judge to correct a slip in admitting incompetent evidence. The first one is that of *State v. Nay,* 15 N. C., 328. There, the Court held that if improper evidence be received, it may afterwards be pronounced incompetent, and the jury instructed not to consider it. The Court said, Chief Justice Ruffin speaking for the Court: "In such a case, I conceive that it is not the object of the law, nor the province of an appellate tribunal, to watch for and catch at an *inadvertence* into which the Judge was *betrayed for an instant;* but to see that no error was finally committed and that ultimately that law and justice of country were truly administered." In *McAllister v. McAllister,* 34 N. C., 184, there was one piece of incompetent evidence received—the register's book. The Court said: "If there had been an error in admitting the register's book, the defendant would have no cause of complaint, for the evidence was clearly and promptly withdrawn from the jury as irrelevant, and the defendant suffered no prejudice from it. It is undoubtedly proper and in the power of the Court to correct a slip by withdrawing improper evidence from the consideration of the jury, or by giving such explanations of an error as will prevent it from misleading a jury. Here, that was so effectually done that neither the Court nor the counsel on either side took any notice of the mortgage in submitting their observations to the jury."

GATTIS v. KILGO.

In *State v. Collins,* 93 N. C., 564, after the evidence had closed, and one of the counsel for James Collins had finished addressing the jury, and when the Solicitor was partly through his remarks to the jury, but before the last speech of the defendant's counsel (who had the closing speech) was made, his Honor told the jury that the declaration of the defendant, Julius Jones, made to the witness Southall, which had been received in evidence, was inadmissible and was ruled out.

In *Bridgers v. Dill,* 97 N. C., 222, the Court told the jury that the evidence of one of the witnesses on one point—how much crop might have been made on a piece of land but for the trespass—was to be excluded from their consideration. So, in the cases of *State v. Ellen,* 104 N. C., 853; *State v. Crane,* 110 N. C., 530; *Wilson v. Mfg. Co.,* 120 N. C., 94, and *Crenshaw v. Johnson,* 120 N. C., 270, only one point of evidence was corrected and withdrawn from the consideration of the jury. But the permitting of the introduction of the incompetent evidence pointed out in this case was not a simple slip on the part of the Judge, which our trial judges can correct at almost any time before judgment; but it was a misconception of the theory on which the case should have been tried. It was a case of privileged occasion. His Honor tried it as a case of ordinary libel, the publication being *per se* libelous.

The incompetent evidence embraced nearly the whole of the evidence offered to show malice. Indeed, we are not absolutely sure that there was any evidence of malice offered in the case. But we do not undertake to decide that now. There was error, for which there must be a

New Trial.

CLARK, J., did not sit on the hearing of this case.