## PARROTT v. RAILROAD.

(Filed March 20, 1906).

*Railroads—Ejection—Evidence—Punitive Damages—Withdrawal of Incompetent Evidence—Harmless Error—Custom.*

1. In an action to recover damages for wrongful ejection, where the evidence showed that the plaintiff, who was a passenger, was wrongfully put off the defendant's train at night in the country, and that the conductor and brakeman took hold of him and forcibly ejected him in the presence of other passengers, and that the conductor was rude, stern, harsh and humiliating in his demeanor towards plaintiff, the court did not err in submitting the assessment of punitive damages to the jury.

2. Where the evidence, admitted over appellant's objection and afterwards withdrawn from the jury, was so compact and brief and the language of the judge so clear in withdrawing it, that this court is satisfied the jury could not have been misled or unduly influenced against appellant by it, a new trial will not be ordered.

3. Where the defendant was permitted to prove the custom of the conductor in regard to taking up tickets and checking passengers from all stations, the testimony of witnesses that this conductor had on previous occasions called upon each of them for a ticket after it had been surrendered to him, was competent for the purpose of rebutting this custom and showing its fallibility.

ACTION by Simon B. Parrott against Atlantic & North Carolina Railroad Co., heard by *Judge W. B. Councill* and a jury, at the December Term, 1905, of the Superior Court of LENOIR. From a judgment for the plaintiff, the defendant appealed.

This is an action to recover damages for a wrongful ejection of the plaintiff from the defendant's train. The following issues were submitted:

1. Did the plaintiff purchase the ticket from the defendant, as alleged in the sixth paragraph of the complaint? Yes.

2. Did the defendant wrongfully eject the plaintiff from its train, as alleged in the complaint? Yes.

3. If so, what actual damages is the plaintiff entitled to recover of defendant? $5.55.

4. Did the defendant wilfully and wantonly or with malice eject said plaintiff from its train, as alleged in the 9th paragraph of the complaint? Yes.

5. If so, what punitive damages is the plaintiff entitled to recover of the defendant? $500."

*Loftin & Varser* and *G. V. Cowper* for the plaintiff.
*N. J. Rouse* and *P. M. Pearsall* for the defendant.

BROWN, J. 1. Defendant contends that there is no evidence in the record warranting the imposition of smart money. The jury have found that plaintiff was rightfully a passenger and was wrongfully put off defendant's train at night in the country, some 12 miles from Goldsboro. Under the fourth issue they have found the ejection was wilful and wanton. We find sufficient evidence in plaintiff's own testimony to be submitted to the jury upon that issue. Plaintiff states that the conductor and brakeman took hold of him and forcibly ejected him, that he was in the presence of other passengers and that the conductor was rude, stern, harsh and humiliating in his demeanor towards plaintiff. We think that

the authorities are clear that His Honor, upon the evidence, did not err in submitting the assessment of punitive damages to the discretion of the jury. *Holmes' case,* 94 N. C., 318; *Hutchinson's case,* 140 N. C., 123; *Ammons' case,* 140 N. C., 196.

2. (Exceptions 1, 2, 3, 4 and 5). These five exceptions are all directed to the same class and kind of testimony, and all involve the same principle. His Honor, in overruling the five several objections of defendant, and in admitting the evidence embraced in these five exceptions, permitted the plaintiff to detail to the jury what transpired from the time that he left the train near LaGrange until his return home the next morning, involving a description of an injury to his toe, his fright during the night on the way to Goldsboro, the soiled condition of his face and clothing, and his wandering around Goldsboro during the night. We are inclined to think that this evidence or some of it was competent upon the issue as to actual damages, but as that view was not considered in the argument or briefs, we do not deem it necessary to decide the question. His Honor withdrew the consideration of all of it from the jury in a very clear and distinct manner. In doing so, we do not think His Honor exceeded his authority. When we can see that the appellant has been really injured by such action, we will always order a new trial. In this case the evidence admitted and withdrawn was so compact and brief, and the language of His Honor so clear in withdrawing it, that we are satisfied the jury could not have been misled or unduly influenced against defendant by it. *Crenshaw v. Johnson,* 120 N. C., 270, and *Wilson v. Manufacturing Co.,* 120 N. C., 95, are in point.

The case relied on by defendant (*Gattis v. Kilgo,* 131 N. C., 199), is easily distinguished. The court based its ruling upon the ground that the incompetent evidence pointed out was not a simple error upon the part of the trial judge, which can be corrected at almost any time before verdict; but that, as the court says, "it was a misconception of the theory

on which the case should have been tried," that "the incompetent evidence embraced nearly the whole of the evidence offered to show malice."

3. (Exceptions 6, 7 and 8). These three exceptions arise upon the admission by His Honor of the testimony of witnesses that Capt. Hinnant, the conductor, had on previous occasions called upon each of them for a ticket after it had been surrendered to him. The defendant was permitted to prove the habit or custom of Hinnant, the conductor, in regard to taking up tickets and checking passengers from all stations on the road. The conductor testified: "This custom lets us know where the passenger is going and that we have taken his ticket." It was offered by defendant to show that the conductor could not have overlooked the fact that he had once taken up plaintiff's ticket. The testimony of the witnesses of the plaintiff tended to rebut this custom and to show its fallibility, if it existed, by offering several instances when the same conductor had made the same mistake. "Of the probative value of a person's habit or custom, as showing the doing on a specific occasion of the act which is the subject of the habit or custom, there can be no doubt." Wigmore, vol. 1, sec. 92; *Mathias v. O'Neill,* 94 Mo., 527. To rebut this, a negative habit may be shown by evidence, tending to prove that there was no such habit or custom, or that the custom was the contrary. The plaintiff in this case undertook to deny the existence of such an infallible habit or custom by showing specific instances where the habit failed, if there was such a habit. How else could plaintiff contradict it? "That a negative habit may be shown and not merely an affirmative one, seems unquestionable," etc. 1 Wigmore, sec. 376. The only way in which the value of the alleged custom could be judged was by subjecting it to the test of specific instances. The testimony was competent for that purpose. *State v. Railroad,* 58 N. H., 411, and cases cited.

Upon a careful examination of the record, we find no error.

Affirmed.