In re WILL OF W. T. YELVERTON.

(Filed 28 May, 1930.)

1. **Trial B e—Mistrial should be awarded where appellant would be injured although incompetent evidence should be withdrawn from jury.**

   While error will not ordinarily be held on appeal when the trial court withdraws incompetent evidence from the jury and instructs it not to

consider it, incompetent evidence may not be withdrawn without ordering a mistrial where the inadvertence is protracted and injury would result to the appellant by such action.

**2. Trial B c—Objection to withdrawal of incompetent evidence held not to be waiver of objection entered to its admission—"Waiver."**

Where incompetent evidence has been introduced upon the trial over objection duly made, and the evidence remains with the jury for a considerable time, and it is apparent their verdict would be influenced by such evidence, although the party introducing such evidence offers to withdraw it: *Held*, the objection of the adverse party to its withdrawal upon the ground that it would deprive him of his objection to its admission, will not be held as a waiver of his objection to its admission, a waiver being a voluntary relinquishment of a known right, implying an election to forego some advantage which might have been otherwise insisted upon.

**3. Trial E h—Whether the giving of additional instructions was error under circumstances of this case not decided on state of record.**

The question as to whether additional instructions given at the request of the jury after a night of deliberation of the case in the absence of the attorneys and the court stenographer constituted error is not decided, the record being silent as to whether the instructions were given before or after the court had opened for the day's session and its present decision being unnecessary.

**4. Wills D h—Evidence in this case held incompetent on issue of mental capacity.**

Where in caveat proceedings the question as to undue influence has been eliminated from the case and a mass of evidence to the effect that the testator had expressed a desire when admittedly sane not to make a will and as to a controversy among the sons of the deceased as to how the estate should be administered has been allowed to remain before the jury on the question of mental capacity, the evidence is incompetent upon the issue, and it necessarily affecting the verdict, a new trial will be awarded.

APPEAL by propounders from *Grady, J.,* at October Term, 1929, of WAYNE.

Issue of *devisavit vel non,* raised by a caveat to the will of W. T. Yelverton, late of Wayne County, based upon alleged mental incapacity and undue influence.

Harrison Yelverton, son of the deceased and one of the caveators, testified, over objection of propounders, that on a number of occasions he talked with his brother Paul, administrator *c. t. a.* of his father's estate and one of the propounders, relative to the mental condition of their father, and repeatedly told him that, in his opinion, he was not mentally capable of making a will, after suffering a stroke of paralysis. The witness related in detail the numerous conversations he had with his

brother, continuing over a period of years, which evidence covers several pages in the record and was brought sharply to the attention of the jury.

The following evidence of the witness was likewise the subject of objection: "I have heard my father say since I was a young boy that he never expected to make a will. He said: 'They are never fair or satisfactory; children are dissatisfied and the law will settle it fairly.' Before he was paralyzed and after my mother's death, he said he didn't want a will, but wanted his property divided equally among his children without a will."

Further, the witness was allowed to testify, over objection, that after his father's death he protested to the clerk against the appointment of his brother Paul as administrator. "I told the clerk that I wouldn't want Paul or Ed to be administrator; I would rather have some outsider to administer. My brothers, Ed, Leslie, Paul and myself got together one night, and I said something about an administrator and Paul said, 'That has all been settled,' and I said, 'But not yet,' and he said, 'I have qualified.' Ed objected to that, as well as to the will, and Ed said, 'I shall dissent from the will if I am the only one,' and Paul said, 'That is your privilege.' "

Mrs. W. T. Turlington testified, over objection of propounders, that statements and declarations similar to those made by Harrison Yelverton to his brother Paul were also made to her. The competency of this evidence was likewise the subject of sharp debate.

At the close of all the evidence, the court stated that no issue of undue influence would be submitted to the jury; whereupon the caveators requested that the testimony of Harrison Yelverton and Mrs. Turlington, relative to Harrison Yelverton's opinion of his father's inability to make a will, which had been admitted over objection of propounders, be stricken out and withdrawn from the jury's consideration. To this procedure the propounders objected, and "upon this objection being made, the court refused to strike out the testimony and withdraw same from the jury."

From a judgment sustaining the caveat, on a finding of mental incapacity, the propounders appeal, assigning errors.

*Langston, Allen & Taylor and Dickinson & Freeman for propounders.*
*K. C. Royall, J. Faison Thomson and Teague & Dees for caveators.*

STACY, C. J. It is the contention of the propounders that the declarations of Harrison Yelverton, son of the alleged testator and one of the caveators, and the conversations he had with Paul Yelverton, another son and administrator *c. t. a.* of the deceased, relative to the mental

condition of their father, were not against the interest of said caveator, but decidedly in his favor, and, for this reason, were incompetent and should have been excluded. *McDonald v. McLendon,* 173 N. C., 172, 91 S. E., 1017; *In re Fowler,* 156 N. C., 340, 72 S. E., 357; *Linebarger v. Linebarger,* 143 N. C., 229, 55 S. E., 709; *Enloe v. Sherrill,* 28 N. C., 212. They likewise contend, and for the same reason, that the testimony of Mrs. Turlington was incompetent and objections thereto should have been sustained.

In reply, the caveators say that, conceding the incompetency of this evidence, when they offered to withdraw it at the close of the case, the propounders lost the exceptions which they had previously taken, or waived them, by objecting to having the evidence withdrawn or stricken out. *Wilson v. Mfg. Co.,* 120 N. C., 94, 26 S. E., 629.

It is undoubtedly approved by our decisions that the trial court may correct a slip in the admission of isolated or single points of evidence by withdrawing such evidence at any time before verdict and instructing the jury not to consider it. *Hyalt v. McCoy,* 194 N. C., 760, 140 S. E., 807; *S. v. Stewart,* 189 N. C., 340, 127 S. E., 260; *Cooper v. R. R.,* 163 N. C., 150, 79 S. E., 418; *Parrott v. R. R.,* 140 N. C., 546, 53 S. E., 432. But this may not be done, without ordering a mistrial, where the inadvertence is protracted and injury would result to the appellant by such action. *Gattis v. Kilgo,* 131 N. C., 199, 42 S. E., 584. "When we can see that the appellant has been really injured by such action, we will always order a new trial"—*Brown, J.,* in *Parrott v. R. R., supra.* Compare, also, *S. v. Bryant,* 189 N. C., 112, 126 S. E., 107; *Stamper v. Commonwealth,* 188 Ky., 538; *S. v. Hopkins,* 50 Vt., 316; *People v. Sweeny,* 304 Ill., 502; *S. v. Marvin,* 197 Iowa, 443.

On this phase of the case, therefore, the principal question presented resolves itself into an interpretation of the record. The evidence was admittedly incompetent; objection was duly made at the time of its admission; caveators offered to withdraw it at the close of the case, but propounders objected on the ground that it had been before the jury for two days or for a considerable length of time, necessarily leaving a hurtful impression, and that to strike it out then would deprive them of their exceptions already taken, while the caveators, for all practical purposes, would still have the benefit of such evidence. *Shelton v. R. R.,* 193 N. C., 670, 139 S. E., 232. Under these circumstances, the court refused to strike out the evidence, and it was allowed to remain before the jury.

It may be said with assurance that the propounders did not intend to waive their original exceptions, for one of the reasons why they objected to having the evidence stricken out at the close of the case was to preserve the exceptions which they had theretofore taken. A waiver is a

voluntary relinquishment of a known right and implies an election to forego some advantage which otherwise might be insisted upon. *Mfg. Co. v. Building Co.,* 177 N. C., 103, 97 S. E., 718, 27 R. C. L., 904. It seems that the trial court took this view of the matter, as he allowed the original exceptions to remain in the record in settling the case on appeal, and it is not stated that the refusal to strike out the evidence was based on any supposed waiver, or withdrawal of the original objections. Hence, if we treat this evidence as having been admitted over objections, duly preserved, its incompetency is not seriously questioned.

But, without placing our decision on this ground alone, the overshadowing objection to the validity of the trial would seem to be that when the issue of undue influence was eliminated from the case, a mass of incompetent evidence was allowed to remain before the jury which necessarily affected the verdict on the issue of alleged mental incapacity. The mere fact that the alleged testator had expressed a desire, when admittedly sane, to leave no will, because he thought the law would settle his estate fairly, could hardly be considered, on the present record, as evidence of mental incapacity at a later date, when a paper-writing, purporting to be a will, was executed in due form as such. *In re Will of Brown,* 194 N. C., 583, 140 S. E., 192, at page 597. Nor would the controversy among the sons of the deceased, after their father's death, as to how the estate should be administered and by whom, seem to have any bearing on the question of testamentary capacity. Yet all this evidence was before the jury, and presumably considered by it, on the issue of alleged mental incapacity.

The record contains another exception which was the subject of earnest debate before us. After considering the case over night, the jury, on the following morning, asked the court for further instructions on the question of testamentary capacity, which the court gave in the absence of counsel on both sides and in the absence of the court stenographer. The record is silent as to whether this occurred before or after the court had opened for the day's session. For this reason, and because it is unnecessary presently to decide the question, we omit any definite ruling on the exception, but call attention to what is said on the subject in McIntosh's North Carolina Practice and Procedure at page 647.

For the error, as indicated, a new trial must be awarded; and it is so ordered.

New trial.