In the matter of The Will of JERRY M. THOMPSON, Deceased.

(Filed 30 June, 1958.)

**1. Wills § 22c—**

Undue influence to render a will invalid must be of a kind which operates on the mind of the testator at the very time the will is made, and causes its execution.

**2. Wills § 23c—**

Since undue influence is frequently employed surreptitiously and is chiefly shown by its result, wide latitude must be allowed in the introduction of evidence upon the issue, and as a general rule any evidence which tends to show an opportunity and disposition to exert undue influence, the degree of susceptibility of the testator, or a result indicative of the exercise of undue influence, is competent unless proscribed by some rule of law.

**3. Same—**

Testimony of caveator that when she came to see her 84-year-old father less than two years prior to his execution of the paper writing, he did not recognize her, *is held* competent on the issue of undue influence as tending to establish the mental condition of testator and his susceptibility to influence, as well as on the issue of mental capacity.

**4. Same:    Evidence § 32—**

The rule prohibiting an interested party from testifying as to a transaction with decedent does not preclude a caveator from testifying as to his opinion of the mental condition of testator.

**5. Evidence § 42c:    Wills § 23c—**

Testimony of declarations by propounder, the sole party interested in sustaining the paper writing, tending to show that he procured an attorney to draw the will he wished testator to sign, that he objected to the other children of testator inquiring about the matter, and as to his financial transactions with testator, *is held* competent, regardless of when made, as declarations or admissions against interest on the issue of undue influence.

**6. Appeal and Error § 41—**

The refusal of the court to strike certain testimony, even though such testimony be technically incompetent, cannot justify a new trial when its admission is not sufficiently prejudicial as to have affected the result.

**7. Same—**

The admission of evidence cannot be held prejudicial when evidence of the same import is admitted without objection.

**8. Wills § 23c—**

Evidence to the effect that testator kept large sums of money on his person or in his possession as the result of influence exerted by propounder that banks were unsafe, *is held*, in view of the other facts and circumstances adduced by the evidence, properly admitted upon the issue of undue influence.

**9. Wills §§ 23½, 23b—**

Testimony of a disinterested party that some time after the execution of the will in suit testator stated that he had made no will, is competent upon the issue of mental capacity, but not upon the issue of undue influence. Nevertheless, when there is only a general objection to its admission and no request that it be restricted to the issue of testamentary capacity, its general admission will not be held for error.

**10. Wills § 23c—**

Testimony of a disinterested witness of a declaration made by testator, even though made a number of months after the execution of the writing, tending to show coolness in the relationship of testator and propounder, is competent upon the issue of undue influence when it tends to throw some light on the state of mind of testator at the time of executing the instrument, there being other independent and substantive evidence of undue influence.

**11. Appeal and Error § 41—**

The refusal to strike testimony ordinarily is not prejudicial when other testimony to the same import has theretofore been admitted without objection.

**12. Appeal and Error § 40—**

A new trial will not be awarded for mere technical error, the burden being upon appellant not only to show error but to show that the al-

leged error was prejudicial in amounting to the denial of some substantial right.

APPEAL by propounder Mack B. Thompson from *Williams, J.*, September 1957 Civil Term of ALAMANCE.

Issue of *devisavit vel non.*

Jerry M. Thompson, a citizen and resident of Alamance County, died in that county on 20 July 1956 at the age of 86 years, leaving him surviving twelve children, all of whom are adults.

On 25 July 1956 a paper writing, dated 19 October 1954, purporting to be the last will of Jerry M. Thompson, was admitted to probate in common form by the procurement of Mack B. Thompson, a son of Jerry M. Thompson, who was named therein as executor. On 26 July 1956 letters testamentary were issued to him.

The paper writing purported to bequeath to a daughter two dollars, to ten sons and daughters fifty dollars each, and to bequeath and devise all the remainder of the property, real, personal or mixed, to Mack B. Thompson in fee.

An issue of *devisavit vel non* was raised by a caveat to the alleged will filed on 27 July 1956 by ten of the sons and daughters of Jerry M. Thompson. A son, Kirk Thompson, did not join in filing the caveat, but testified in the trial, "I have aligned myself with my sisters in the caveat proceeding." Alleged mental incapacity and undue influence are the grounds upon which the caveat is based.

The issues submitted to the jury, with its answers thereto, are as follows:

"1. Was the paper writing offered for probate as the last will and testament of Jerry M. Thompson signed and executed according to law?   Answer: YES.

"2. If so, did the said Jerry M. Thompson have the mental capacity sufficient to make a will?   Answer: YES.

"3. If so, was the execution of said paper writing procured by undue influence?   Answer: YES.

"4. Is the paper writing propounded by Mack Thompson and others and every part thereof the last will and testament of Jerry M. Thompson, deceased?   Answer: NO."

From a judgment on the verdict the propounder appeals.

*B. F. Wood, M. Glenn Pickard and Sanders & Holt for propounder, appellant.*

*Clarence Ross and P. W. Glidewell, Jr., for caveators, appellees.*

PARKER, J.   The propounder has 185 assignments of error. The

first assignments of error discussed in his brief are based upon his exception to the submission of the third issue to the jury, and upon his exception to the refusal of the court to give peremptory instructions in his favor on each issue. The court gave a peremptory instruction in his favor on the first issue. The jury answered the second issue, "Yes." The discussion in the propounder's brief is, therefore, restricted to the refusal of the court to give peremptory instructions in his favor on the third and fourth issues.

Caveators offered evidence tending to show the following facts: Jerry M. Thompson was 85 years old in December 1954. His wife died in 1935. From then until his death on 20 July 1956, he continued to live in his home in Burlington. When he died he had twelve living adult children. From 1943 to 1954 he had roomers in his home, and a daughter, Marcre Thompson Haith "was in and out living there." During the same time his daughter, Doretha Thompson Bahadur, who was then living in Burlington, saw her father two or three times a day, and frequently spent the night at his home. His daughters, Lovelia Thompson Cobb and Zonie Thompson Holt, who lived in New York, visited him several times a year. A son, Kirk Thompson, lived with him in his home from December 1953 until his death. A daughter, Cordell Thompson Clayton, who lived from 1950 to 1956 in Burlington and New York, stayed with her father several times in 1953 and 1954 for periods of two or three weeks to two months. His son, the propounder Mack B. Thompson, lives in Burlington. His other children live outside of North Carolina.

In early 1953 Jerry M. Thompson fell from his backdoor step to the basement twisting his spine, and there was a hole in his intestines. He was in a hospital from 16 to 24 February 1953. After his return home from the hospital, he moved around on two canes. In September 1954, he was very feeble and senile. He was forgetful, and didn't know people. His mental condition was bad. He would forget he had eaten, and where he was. He was highly nervous.

In October 1954 Jerry M. Thompson, Mack B. Thompson and Walter D. Barrett, a lawyer, came into the office of the Sheriff of Alamance County in the courthouse. When they came in, Mack B. Thompson had his father by the arm. Walter D. Barrett had a paper. The paper was put on a desk. A chair was pulled up, and Jerry M. Thompson sat down. In the Sheriff's office the paper was not read to Jerry M. Thompson. Mack B. Thompson said to his father, "here, sign this." Jerry M. Thompson was nervous and pretty feeble, and it took him a long time to sign his name. Mack B. Thompson took his father away. A Loy boy was there.

The purported will bears the names of Walter D. Barrett and John H. Loy as subscribing witnesses. The evidence of the subscrib-

ing witnesses, offered by the propounder, is to this effect: On 19 October 1954 Jerry M. Thompson, who was alone, saw Walter D. Barrett in the Alamance County Courthouse, and asked him to draft his will, telling him what he wanted put in it. The will was drafted by Barrett in the Patrol office in the courthouse in the presence of Jerry M. Thompson. The same day the will was signed in the Sheriff's office by Jerry M. Thompson, and by Walter D. Barrett and John H. Loy as subscribing witnesses.

Lovelia Thompson Cobb came from New York to visit her father during the Christmas Season 1954. He was upset, and she and her father tried, without success, to locate a paper he had signed. On that visit she saw Mack B. Thompson at her father's home, and asked him, "what was the paper papa was trying to get from him?" He replied: "Some papers. We destroyed the papers." She asked him, "what papers did you destroy?" He replied: "None of your business. . . . Mind your own g. d. business, this is between papa, me and Barrett. I got Barrett for papa and he is not a drunkard, and if he is a drunkard, he is a good lawyer and I know what I am doing. I will pay papa the $4,000.00 when I get it. . . . Barrett is a drunkard but he was a good lawyer and he does my dirty work."

Doretha Thompson Bahadur testified that the first time she knew of the paper her father signed in the courthouse was five days after his death, and that she asked Mack B. Thompson was that the same paper he had in the hospital. Mack B. Thompson replied: "You see what I done. Mind your own damned business, or I put the Justice of the Peace on you, Mr. Harden."

Cordell Thompson Clayton testified that in 1954 she asked Mack B. Thompson, what was the paper he tried to get their father to sign, and he replied: "None of your g. d. business. You all are too g. d. meddlesome. You got yours; ain't that enough?"

While Jerry M. Thompson was in the hospital in February 1953, Mack B. Thompson brought him beer to drink, and on two occasions had a paper in his hand, and was asking his father to sign it. Jerry M. Thompson made no answer because he was doped.

During 1953 and 1954 Mack B. Thompson brought whisky, wine or beer to his father once or twice a week. In the spring or summer of 1954 Doretha Thompson Bahadur found her father and Walter D. Barrett at Mack B. Thompson's place of business, where he sells beer, wine, groceries, gas, oil, etc. Mack B. Thompson was there. Barrett was drunk, and her father was weaving. Mack B. Thompson called her vile names. She carried her father away.

In passing upon the questions as to whether the trial court committed error in submitting the issue of undue influence, and committed

error in refusing to give a peremptory instruction on that issue in the propounder's favor, we have not deemed it necessary to state the propounder's evidence contra on that issue. Neither is it necessary to state all of the caveator's evidence.

The rationale of the doctrine of undue influence sufficient to avoid a will is that influence is exerted by various means of a kind that so overpowers and subjugates the mind of the testator as to destroy his free agency, and to make him execute a will, which, although his, in outward form, is in reality not his will, but the will of another person, which is substituted for that of the testator. *In re Will of Kemp,* 234 N.C. 495, 67 S.E. 2d 672; *In re Will of Turnage,* 208 N.C. 130, 179 S.E. 332; *In re Mueller's Will,* 170 N.C. 28, 86 S.E. 719; *In re Abee's Will,* 146 N.C. 273, 59 S.E. 700; *Marshall v. Flinn,* 49 N.C. 199.

The undue influence which renders a will invalid must be of a kind which operates on the mind of the testator at the very time the will is made, and causes its execution. Page on Wills, Lifetime Ed., Vol. 1, sec. 191, where many cases are cited; 94 C.J.S., Wills, pp. 1071-1073. "It is not material when the undue influence was exercised, if it was present and operating on the mind of the testator at the time the will was executed." 57 Am. Jur., Wills, sec. 353.

Undue influence is frequently employed surreptitiously, and is chiefly shown by its results. When the issue of undue influence is raised, the question presented is usually one of the effect of a long course of conduct upon the mind of the testator at the time the will is made, and the evidence by which it is established is usually circumstantial. *In re Will of Lomax,* 226 N.C. 498, 39 S.E. 2d 388; *In re Stephens' Will,* 189 N.C. 267, 126 S.E. 738; *In re Will of Everett,* 153 N.C. 83, 68 S.E. 924.

In the *Lomax* case, speaking of evidence to show undue influence in a will case, the Court said: "Almost necessarily the proof must cover a multitude of facts or circumstances going into the pattern, in the making of which the evidence of many witnesses may have separate, but interrelated, parts, shading from light to heavy. We cannot judge of the importance of the bit of mosaic being laid at the time or the part of the pattern being woven except in connection with the whole design."

In Page on Wills, Lifetime Ed., Vol. 2, sec. 812, it is written: "Evidence which tends to prove or disprove the subordination of the will of testator to others must, except in extreme cases, take a very wide range. Evidence which shows an opportunity and disposition to exert undue influence, the degree of susceptibility of testator to undue influence, and a result which indicates that undue influence has been exerted, are all admissible."

Lovelia Thompson Cobb testified that she came home to see her father in 1953 after his fall in January or February 1953. He was then 84 years old. When she then saw him at his home, she gave this testimony as to his condition: "He stayed in bed a good deal after 1953, but he wasn't disabled so he couldn't get in and out. He was tired and he rested a great deal. When I came in, Papa didn't recognize me." Propounder assigns as error the refusal by the court, on his motion, to strike out this testimony. In his brief he objects to these words: "Papa didn't recognize me." This assignment of error is overruled. Because the strength or weakness of mind of a testator and his susceptibility to influence are important in determining whether undue influence was exerted, the mental and physical condition of Jerry M. Thompson, together with his age, less than two years prior to the signing by him of the challenged paper writing, is, under an issue of undue influence, a proper subject for consideration by the jury, and evidence tending to show such condition is admissible. *In re Will of Ball,* 225 N.C. 91, 33 S.E. 2d 619; *In re Stephens' Will, supra; In re Will of Hinton,* 180 N.C. 206, 104 S.E. 341; *McDonald v. McLendon,* 173 N.C. 172, 91 S.E. 1017; *Linebarger v. Linebarger,* 143 N.C. 229, 55 S.E. 709, 10 Ann. Cas. 596; 94 C.J.S., Wills, secs. 233 and 246; 57 Am. Jur. Wills, secs. 356 and 396. This evidence was also competent on the second issue of mental capacity to make a will, and it was not too remote in point of time. *In re Will of McDowell,* 230 N.C. 259, 52 S.E. 2d 807; *In re Will of Kestler,* 228 N.C. 215, 44 S.E. 2d 867; *In re Will of Brown,* 194 N.C. 583, 140 S.E. 192. The fact that Lovelia Thompson Cobb was prohibited by G.S. 8-51 from testifying as to any transactions and communications with her deceased father, did not make incompetent her testimony, based on her observations, as to his mental and physical condition, and her opinion "Papa didn't recognize me." Although she did not testify that her father was of unsound mind, this evidence was admissible for the jury to consider as a basis for the inference that Jerry M. Thompson on the day he signed the challenged paper writing was lacking in the testamentary capacity necessary to make a will, or on such day, if he did have testamentary capacity, he was in such mental and physical condition as to be susceptible to the influence of Mack B. Thompson. "Witnesses prohibited from testifying to personal transactions or communications with a decedent, by reason of their relation to the action or the interest which they may have in its outcome, are not thereby excluded from giving their opinion as to his mental condition." *In re Will of Brown,* 203 N.C. 347, 166 S.E. 72. See *Goins v. McLoud,* 231 N.C. 655, 58 S.E. 2d 634; *In re Will of Brown,* 194 N.C. 583, 140 S.E. 192; *Rakestraw v. Pratt,* 160 N.C. 436, 76 S.E. 259; *In*

*re Will of Fowler,* 159 N.C. 203 74 S.E. 117; *McLeary v. Norment,* 84 N.C. 235.

Lovelia Thompson Cobb testified that when she came home during Christmas 1954, she saw Mack B. Thompson, her brother, at her father's home, and asked him what paper her father was trying to get from him. He replied: "some papers. We destroyed the papers." She asked him, "what papers did you destroy?" He replied: "None of your business." She then added: "Why would you have your lawyer to take Papa's papers? Papa has a lawyer. Papa didn't want Mack's lawyer for a lawyer and he told Mack not to bring him there." She then testified Mack B. Thompson used these words when she asked him about getting this paper. "Mind your own g. d. business, this is between Papa, me and Barrett. I got Barrett for Papa and he is not a drunkard and if he is a drunkard, he is a good lawyer and I know what I am doing. I will pay Papa the $4,000.00 when I get it and none of you (a vile word omitted) can make me pay it before. All of you are a bunch of b——— and low-down cows. . . . Barrett is a drunkard, but he was a good lawyer and he does my dirty work." Plaintiff assigns as error the refusal of the court, on his motion, to strike out these words: "Why would you have your lawyer to take Papa's papers? Papa has a lawyer. Papa didn't want Mack's lawyer for a lawyer, and he told Mack not to bring him there," but in his brief he complains only of the last sentence quoted.

Mack B. Thompson is the sole beneficiary under the purported will for all practical purposes — his eleven brothers and sisters were given only nominal sums—and he is the only person interested in sustaining the paper writing as the will of his father. Such being the case, his declarations or admissions are binding as against interest, and admissible no matter when made, on the issues of undue influence and testamentary capacity. Anno. 167 A.L.R., p. 64 *et seq.;* 57 Am. Jur., sec. 426. "The admission of a legatee is evidence against the will where he is the sole beneficiary under it." *In re Will of Fowler,* 156 N.C. 340, 72 S.E. 357.

Even if we concede that the statement "Papa didn't want Mack's lawyer for a lawyer and he told Mack not to bring him there" is technically incompetent and should have been stricken out, it is our opinion that the failure to strike it out is not, under all the evidence before us, sufficiently prejudicial to require a new trial. The statement not to bring Barrett there patently refers to the home, and all the evidence is to the effect that the purported will was drafted by Barrett in the Alamance County Courthouse, and signed there by Jerry M. Thompson and the subscribing witnesses.

Propounder assigns as error the court's permitting Doretha Thomp-

son Bahadur to testify, over his objection and exception, that Barrett was drunk, when she saw him and her father, who was weaving, at Mack B. Thompson's place of business in the spring or summer of 1954. We cannot see how this evidence was prejudicial to the propounder, because his sister, Lovelia Thompson Cobb, testified that the propounder said, "Barrett is a drunkard."

Propounder has some thirty-eight assignments of error to the admission in evidence, over his objections and exceptions, of countings of Jerry M. Thompson's money, while he was alive, and after he was dead, or to the refusal of his motions to strike it out. That evidence is to this effect: When Jerry M. Thompson was carried to the hospital in February 1953 after his fall, Mack B. Thompson said in the hospital, "I will undress him." There was a wallet in Jerry M. Thompson's pocket, and Doretha Thompson Bahadur removed it. Mack B. Thompson grabbed it, saying "give it to me." She gave the wallet to Richard Moore, who was there. That in September 1954 Jerry M. Thompson had money in his closet, in his pocket, and in his money belt, and Lovelia Thompson Cobb, in the presence of her sister, Doretha Thompson Bahadur, counted the money in her father's bedroom, and it amounted to approximately $13,700.00. That during Christmas 1954 Lovelia Thompson Cobb, in Doretha Thompson Bahadur's presence, counted her father's money on the bed in his room, and it amounted to some $10,000. That in August 1954 his money was counted, when Jerry M. Thompson and two of his daughters were present. That after Jerry M. Thompson's death, his money on his person and under his mattress was counted in the presence of seven people, including Mack B. Thompson's wife and daughter, and it amounted to $3,427.62. In September 1954, after the money was counted, Doretha Thompson Bahadur told Mack B. Thompson: "You have Father all bluffed up like the banks are going busted like they were before and you will not let Papa put his money in the bank because you say the banks are going bankrupt and you are trying to get a-hold of some of it and say the Government would get him for income tax if he put the money in the bank." She then testified: "He struck at me and called me all kinds of w——, cows, and b——." That Mack B. Thompson further said: " Don't put in no bank, keep it right here."

Considering the principle of law that evidence which tends to prove or disprove the subordination of the will of a testator to others must, except in extreme cases, take a very wide range, we think that, in view of all the circumstances, together with the declarations or admissions of the propounder, the evidence of Jerry M. Thompson keeping large sums of money in his house or about his person, the amount of which was correctly ascertained by counting it, was properly ad-

mitted for the consideration of the jury in passing on the third issue, as tending to show the susceptibility of Jerry M. Thompson to the influence of the propounder.

Propounder assigns as error the admission in evidence, over his objections and exceptions, of statements made by Jerry M. Thompson about two weeks before his death to David Hunter, his first cousin and friend, who was 81 years old. David Hunter's testimony as to these statements by Jerry M. Thompson is substantially as follows: He, Jerry M. Thompson, had made no will. What little he had, he wanted divided up between his children, as they had helped him make it. That when he died, he didn't want any mess over what he had. That Mack B. Thompson had enough now: he hardly ever saw him. Propounder cites no authority to support his contention.

The declarations of Jerry M. Thompson made some 21 months after the execution of the challenged paper writing to David Hunter to the effect that he had made no will, and wanted what he had divided up between his children, were not too remote in point of time *(In re Will of Kestler, supra)*, and were competent and properly admitted in evidence for the consideration of the jury on the second issue as to testamentary capacity, but they were not competent, on the instant record, on the third issue of undue influence. *Ir re Will of Kestler, supra; In re Wellborn's Will*, 165 N.C. 636, 81 S.E. 1023; *Rakestraw v. Pratt, supra; In re Burns' Will*, 121 N.C. 336, 28 S.E. 519; *Barker v. Barker*, 36 N.J. Eq. 259; *Purser v. McNair*, 153 Ga. 405, 112 S.E. 648; *Houseman v. Voak*, 157 Ga. 122, 121 S.E. 119; 94 C.J.S., Wills, sec. 52; 57 Am. Jur., Wills, sec. 124; Anno. 107 Am. St. Rep. pp. 463-465, where many cases are cited. See also *Reel v. Reel*, 8 N.C. 248; *Howell v. Barden*, 14 N.C. 442; *Patterson v. Wilson*, 101 N.C. 584, 8 S.E. 229; *In re Shelton's Will*, 143 N.C. 218, 55 S.E. 705; *Linebarger v. Linebarger, supra; In re Will of Fowler*, 159 N.C. 203, 74 S.E. 117; *In re Bailey*, 180 N.C. 30, 103 S.E. 896; *In re Will of Ball, supra;* Stansbury's N. C. Evidence, sec. 163, Declarations of a Testator.

Propounder did not request the court to restrict this evidence to the second issue of testamentary capacity, but objected generally to its admission. *In re Will of Hinton, supra.*

The Court said in *In re Will of Yelverton*, 198 N. C. 746, 153 S.E. 319; "The mere fact that the alleged testator had expressed a desire, *when admittedly sane,* (emphasized here) to leave no will, because he thought the law would settle his estate fairly, could hardly be considered, on the present record, as evidence of mental incapacity at a later date, when a paper-writing, purporting to be a will, was executed in due form as such." This statement in no way conflicts with what we have said above.

The declaration of Jerry M. Thompson to David Hunter, made some 21 months after the signing of the challenged paper writing, that Mack B. Thompson had enough now: he hardly ever saw him, is competent for the consideration of the jury upon the issue of undue influence — there being in the record independent, substantive evidence tending to show undue influence exercised by Mack B. Thompson over his father in the execution of the purported will — as tending to show the relations and feelings between Jerry M. Thompson and his son, Mack B. Thompson, as bearing upon the state of Jerry M. Thompson's mind toward Mack B. Thompson at the time he signed the challenged paper writing bequeathing and devising all of his property to him, except nominal sums of money bequeathed to his other eleven children. Annotation 79 A.L.R. 1471 *et seq.*, where many cases are cited.

Propounder assigns as error the refusal of the court, on his motion, to strike out Doretha Thompson Bahadur's statement to Walter Barrett, "Mack owes Papa $4,000.00." As Lovelia Thompson Cobb had previously testified that Mack B. Thompson said to her, "I will pay Papa the $4,000.00 when I get it and none of you (a vile word omitted) can make me pay it before," it would seem that the refusal of the court to strike out this statement was not harmful to the propounder. If harmful, it certainly does not justify a new trial.

Mack B. Thompson did not testify as a witness in the case.

Upon the evidence in the case the four issues submitted were proper, and the trial court correctly refused to give peremptory instructions in propounder's favor on any issue, except the first issue.

While the court in the beginning of the charge gave a brief recital of the history of allowing the owner of property to dispose of it after death by will, it is not perceived how this harmed the propounder.

Propounder has not shown that any of the evidence objected to, or any of the evidence which the court refused to strike out on his motions, is sufficiently prejudicial to him to justify a new trial. Technical error is not sufficient to disturb the verdict and judgment. The burden is on the appellant not only to show error, but to show prejudicial error amounting to the denial of some substantial right; or to phrase it differently, to show that if the error had not occurred, there is a reasonable probability the trial might have been materially more favorable to him. *Johnson v. Heath,* 240 N.C. 255, 81 S.E. 2d 657; *Collins v. Lamb,* 215 N.C. 719, 2 S.E. 2d 863; *In re Will of Craven,* 169 N.C. 561, 86 S.E. 587.

All of propounder's assignments of error brought forward in his brief have been carefully studied, and all are overruled.

No Error.