BESSIE COOPER ET AL. v. SEABOARD AIR LINE RAILROAD
COMPANY.

(Filed 24 September, 1913.)

1. Trials—Evidence Incompetent—Withdrawing Evidence—Appeal
   and Error—Harmless Error.

   It is not only within the province of the trial judge, but it is
   his duty, to withdraw from the consideration of the jury evidence
   which has been erroneously admitted on the trial of an action;
   and when he has appropriately done so, and it does not appear
   of record that the appealing party has thereby been injured, it
   will not constitute reversible error, the error committed having
   been cured.

2. Expert Evidence—Personal Observation—Corroborative Evidence.

   In this action to recover damages of the defendant for negli-
   gently inflicting an injury upon the plaintiff, the testimony of a
   physician as to the plaintiff's physical condition thereafter is
   held competent as substantive evidence, it being a statement of a
   fact learned from the personal examination made by the witness,
   and also as corroborative of other evidence introduced at the
   trial.

3. Expert Evidence—Physicians—Statements of Party—Biased Tes-
   timony—Competency—Evidence Withdrawn—Appeal and Error
   —Harmless Error.

   There is authority that the opinion of a medical expert based
   upon his examination and statements of an injured person when
   the examination has been made for the purpose of becoming a
   witness for such person in an action to recover damages for a
   personal injury, is incompetent; but however this may be, where
   testimony of this character of the witness has been withdrawn
   from the consideration of the jury by the trial judge, any error
   committed in admitting it is cured.

4. Evidence, Corroborative—Failure to Restrict Evidence—Objec-
   tions and Exceptions—Appeal and Error.

   Where evidence admitted at the trial is competent only in cor-
   roboration, it is the duty of the complaining party to request the
   court to restrict it to the purposes for which it is competent, and
   failing to do so, he may not successfully assign it for error on
   appeal.

COOPER v. R. R.

APPEAL by defendant from *Adams, J.,* at February Term, 1913, of CHATHAM.

This is an action to recover damages for personal injury, caused, as the plaintiff alleges, by the negligence of the defendant.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Hayes & Bynum for plaintiff.*
*Murray Allen for defendant.*

ALLEN, J.   The principal exception relied on is to the admission of certain evidence of Dr. Farthing, an expert witness, which was important to the plaintiff, and which was withdrawn by the court from the consideration of the jury, the defendant contending that although withdrawn from the jury, its impression upon the minds of the jurors remained and affected their verdict.

The authorities are all to the effect that it was not only within the power, but that it was the duty of the judge to withdraw evidence, which he concluded had been improperly admitted (*Gilbert v. James,* 86 N. C., 248; *Bridges v. Dill,* 97 N. C., 225; *Wilson v. Manufacturing Co.,* 120 N. C., 95), and the rule is fully recognized in *Parrott v. R. R.,* 140 N. C., 547, relied on by the defendant, in which *Justice Brown,* while discussing the withdrawal of evidence, says: "His Honor withdrew the consideration of it from the jury in a very clear and distinct manner. In doing so we do not think his Honor exceeded his authority. When we can see that the appellant has been really injured by such action, we will always order a new trial."

We cannot see from the record that the defendant has been injured, and if we were to base a reversal upon the theory of the defendant, we would be acting upon mere conjecture, unsupported by any fact.

The qualifications of jurors prescribed by the statute are that they shall be men "of good moral character and of sufficient intelligence"—"good and lawful men" of the Constitution, and as the presumption is that the public officers intrusted with the duty

to make up the jury lists have performed their duty, we must assume, until the contrary appears, that there was no man on the jury in this action who could not understand the direction of the judge not to consider certain evidence, or who would not honestly obey the instruction.

The present *Chief Justice* said in *Wilson v. Manufacturing Co.,* 120 N. C., 95: "If the jury are to be deemed intelligent enough to obey his instructions in the charge, they must also be able to comprehend his instruction that certain évidence had been improperly admitted and is not to be considered by them."

The comments of Mr. Creasy on the jury system, in his work on the English Constitution, may be appropriately applied to our own juries. He says: "Juries are, of course, liable to error; and when they err, their blunders are made in public, and draw at least a full share of notice; but, on the other hand, we should remember the invariable honesty and the almost invariable patience with which juries address themselves to their duty. No spectacle is more markworthy than that which our common-law courts continually offer of the unflagging attention and resolute determination to act fairly and do their best, which is shown by jurors, though wearied by the length of trials, which are frequently rendered more and more wearisome by needless cross-examinations and unduly prolix oratory. . . . Nor are the errors of judgment which juries fall into by any means so numerous as the impugners of the system assert. The jury generally know what they are about much better than their critics do. 'Twelve men conversant with life, and practiced in those feelings which mark the common and necessary intercourse between man and man,' are far more likely to discriminate correctly between lying and truth-telling tongues, between good and bad memories, and to come to a sound common-sense conclusion about disputed facts, than any single intellect is, especially if that single intellect has been 'narrowed, though sharpened,' by the practice of the profession of the law. . . . Each juror knows that it is not by him alone, but by him and his eleven fellow-jurors conjointly, that the verdict is to be given. Each juror, therefore, knows that if any of the eleven differ from him in opinion at the end

of the case, they must argue the matter out among them. Each juror, therefore, watches the entire progress of the trial with his reasoning faculties intent on every part of each litigant's case, and thus prepares himself for a full and fair discussion of the whole," and he quotes from the French philosopher, De Tocqueville, that, "The jury, and especially the civil jury, serves to imbue the minds of the citizens of a country with a part of the qualities and character of a judge; and this is the best mode of preparing them for freedom. It spreads amongst all classes a respect for the decisions of the law; it teaches them the practice of equitable dealings. Each man in judging his neighbor thinks that he may be also judged in his turn. This is in an especial manner true of the civil jury, for though hardly any one fears lest he may become the object of a criminal prosecution, everybody may be engaged in a lawsuit. It teaches every man not to shrink from the responsibility attaching to his own acts; and this gives a manly character, without which there is no political virtue. It clothes every citizen with a kind of magisterial office; it makes all feel that they have duties to fulfill towards society, and that they take a part in its government; it forces men to occupy themselves with something else than their own affairs, and thus combats that individual selfishness which is, as it were, the rust of the community."

The evidence of Dr. Farthing, which was admitted and not withdrawn, that the muscles in the region of the stomach were rigid, was competent as substantive evidence, and in corroboration of the plaintiff, as the evidence was the result of a physical examination of the plaintiff and was the statement of a fact.

There is authority for the position taken by the defendant, that the opinion of a medical expert, based upon an examination and statements of the party injured, are incompetent, when the examination is made for the purpose of becoming a witness for such party (*R. R. v. Huntley*, 38 Mich., 537; *R. R. v. Wiley*, (Ky.) 121 S. W., 402); but these decisions have no application to the facts presented here, as it appears that all statements made to the doctor by the plaintiff, and his opinion thereon, were withdrawn from the jury.

The defendant admits that the evidence of the father of the plaintiff was competent in corroboration of the plaintiff, but insists that it was not substantive evidence, and complains that his Honor did not restrict the purpose for which it was introduced.

There was no request to restrict the evidence, and the objection is met by Rule 28, 140 N. C., 496: "Nor will it be ground of exception that evidence competent for some purpose, but not for all, is admitted generally, unless the appellant asks, at the time of admission, that its purpose shall be restricted."

Upon the whole record, we find

No error.