# Mims v. Commonwealth.

(Decided November 25, 1930.)

J. RIVERS WRIGHT and EDWARD R. OGDEN for appellant.

J. W. CAMMACK, Attorney General, and JAMES M. GILBERT and M. B. HOLIFIELD, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

Elisha Mims, the appellant, was convicted on the charge of murder and the death penalty was prescribed as his punishment. He killed Robert McGalin on the night of the 24th of August, 1929. McGalin was a police

officer of the city of Louisville. The killing took place on Wood alley, which is between Ninth and Tenth streets in the city of Louisville in the vicinity of Walnut street.

It was reported to McGalin and his partner Loeffler, another police officer, that appellant was conducting himself in an unseemly manner. Mary Allen, who made the report to the officers, had detailed to them that appellant had a pistol and was pointing it at different people and threatening to do bodily harm to them. These officers proceeded with the woman to Wood alley. Upon their approach they saw four people in the alley. It was very dark, or to use the expression of the witness Loeffler, who testified, it was "pitch dark." The persons in Wood alley were observed by the officers as they approached, and either Mary Allen, or some one else, pointed out appellant as the man who had been guilty of the conduct complained of. McGalin approached and seized appellant, placing his hands on the shoulders of appellant. Immediately prior to this, and as the officers approached, some one, probably appellant, threw something between two houses fronting on the alley. At the time the officers saw or heard the object thrown, one remarked to the other, "There goes his pistol." When McGalin took hold of appellant he directed Loeffler to search for the object which had been thrown between the houses. Loeffler had gone between the houses and was making the search when he heard the shooting begin. He had been between the houses about ten seconds, according to his evidence. He came out immediately and he saw a scuffle going on. Appellant broke loose from the officer and in the melee fired one or more shots at Loeffler. Loeffler reached the side of McGalin, and they both emptied their pistols at appellant as he fled. McGalin grew weak and sank down. He was taken to the hospital, where he died within a short while. Appellant succeeded in making his escape from Louisville into the state of Ohio. He was later arrested and returned to Louisville. He confessed the killing, but claimed that he did it in self-defense.

Mary Allen, who conducted the officers to the place where McGalin was killed, testified that when they approached the alley the crowd broke up and the officers approached appellant while he was walking or running away, and as McGalin approached him he drew his pistol and fired upon the officer. Other witnesses testified that the crowd in the alley, began to disperse when the officers appeared. Taking all of the evidence and omitting unes-

sential details, the certain conclusion can be reached that the officers were told by Mary Allen of a difficulty; they proceeded to the place where the difficulty was supposed to be in progress; at the time they approached appellant was not engaged in disorderly conduct or in doing anything; that the crowd began to disperse when the officers approached with their flash-light; that McGalin put his hands on the shoulders of appellant, that is, one hand on one shoulder and the other hand on the other shoulder; that as he thus stood with his hands upon the shoulders of appellant he directed Loeffler to search for the object which had been thrown away; that while Loeffler was searching, appellant procured his pistol and fired the shots that caused the death of McGalin.

There is some evidence to the effect that the witnesses did not know who fired the shot, and that one or more of the others who were present were identified by some of the witnesses as the guilty person; but all of this is immaterial and no evidence to that effect should have been allowed. Appellant admits that he did the shooting, and his sole defense is that he shot in his necessary, or apparently necessary, self-defense. He contends that the officer violently abused him and beat him to such an extent that it appeared to him that it was necessary that he shoot McGalin to save his own life, or to protect himself from great bodily harm.

Appellant has brought the case here assigning a number of grounds for reversal. First he says that the verdict is contrary to the law and the evidence. If all the evidence should be eliminated except that of Mary Allen, still there would be enough evidence to uphold the verdict. She testified that when the officers approached appellant began to shoot, and while the preponderance of the evidence does not support her, still it was a question for the jury to determine who of the witnesses more nearly detailed the actual happenings at the time. Loeffler heard the shots and saw the struggle. The last he had seen of McGalin he was standing with his hands on the shoulders of appellant. He heard the shots and found that McGalin had been wounded three times. After he went to McGalin, he and McGalin fired their pistols until empty at appellant as he fled. There is no lack of evidence, and the first and second ground relied on for reversal may be disposed of by what has been said, because the verdict is not contrary to the evidence and is not flagrantly against the weight of the evidence.

The third ground is that the court erred to the prejudice of appellant in the admission of evidence, but no such evidence is pointed out either in the brief filed in behalf of appellant, or in the bill of exceptions, and while the court is not disposed to search the record for incompetent evidence when none is pointed out, we have done so in this case, and we find no error in this respect prejudicial to the rights of appellant.

Another ground is that the court erred in failing to sustain the motion of appellant for a directed verdict at the conclusion of the evidence offered by the commonwealth. The evidence as detailed above is sufficient to show that the jury was authorized to find that a police officer was shot down by appellant without any justification on the part of his slayer. The contention of appellant that the same motion should have been sustained at the conclusion of all the evidence is likewise without merit.

His last ground relied on for reversal is that the instructions to the jury were erroneous. The Attorney General, in the very able brief which has been filed, substantially confesses that the instructions are erroneous unless there is something in the law or the evidence which authorized the police officers to make the arrest at the time they arrived at the place where appellant and others were assembled.

McGalin had no reason to believe that appellant had committed a felony at the time he came in contact with him. He had no warrant, and it is clear from all of the evidence in the case that appellant was not engaged in the commission of any offense when the officers first saw him, or while he was in their presence prior to the time that he began to shoot. Section 36 of the Criminal Code provides that a peace officer may make an arrest without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested had committed a felony. McGalin was without authority to make an arrest unless, as contended by the Attorney General, the authority to make an arrest without a warrant is found in section 2885, Ky. Stats. After enumerating the powers and duties of police officers, there is found this language: "And for these purposes, with or without warrant, to arrest all persons guilty of violating any law or ordi-

nance for the suppression or punishment of crimes or offenses.''

It is argued by the Attorney General that the language quoted in the section mentioned confers authority upon police officers in the discharge of their duties to make an arrest without a warrant. Probably the language means no more than that the officers are vested with the authority to arrest with a warrant when such an arrest depends upon the possession of a warrant by the officer, to to make an arrest without a warrant when the law authorizes an arrest without a warrant. The intention of the Legislature, apparently, was to confer upon police officers in cities of the first class the same power to make arrests under the law that other peace officers had. This construction of that section is in harmony with the construction placed on an old section of the Statutes dealing with the same subject in the case of Jamison v. Gaernett, etc., 10 Bush (73 Ky.) 221.

In an effort to justify the arrest of appellant without a warrant, the Attorney General cites and relies on the case of Easton et al. v. Com., 82 S. W. 996, 26 Ky. Law Rep. 960. The court in that case considered the right of a police officer to make an arrest without a warrant under a statute which provided that such an arrest might be made for drunkenness or disorderly conduct at any time without a warrant. Drunkenness is an offense within itself, and a person who is drunk commits an offense in the presence of any officer who comes in contact with him. That opinion stated that it was the duty of the officer to arrest a person guilty of drunkenness without a warrant, or to arrest a person guilty of disorderly conduct in his presence without a warrant. The other cases relied on by the commonwealth are cited in an effort to convince the court that the opinion in the Jamison case, supra, was wrong in holding that it would be a violation of section 10 of the Constitution of Kentucky to allow an officer to make an arrest for an offense not committed in his presence. The Jamison case does not decide that question. The opinion goes no further than to hold that the statute relied on did not authorize a police officer to make an arrest for an offense committed not in his presence, unless the officer had reasonable grounds to believe that the offender had committed a felony.

Counsel for appellant insists that there should have been no instruction on willful murder, and cites as

authority the opinion of Brittain v. U. S. Fidelity & Guaranty, 219 Ky. 465, 293 S. W. 956. That was a civil case, and the opinion does not hold that a person who, in resisting an unlawful arrest, kills a peace officer, may not be found guilty of any greater offense than manslaughter. It is true the opinion quotes from 2 R. C. L. p. 469, and the quotation contains such a statement; but it was quoted to show that a peace officer has no authority to make an arrest outside of his baliwick. If the killing is willfully and maliciously done, it is murder, although the person killed may have been an officer attempting to make an unlawful arrest.

The evidence in this case does not show that McGalin had authority to arrest appellant. As there was no evidence that appellant had committed an offense in the presence of the officer at the time McGalin took hold of him, the jury should have been advised by the court in appropriate language that McGalin was without authority to make the arrest, but if the jury believed beyond a reasonable doubt that the shooting of McGalin was maliciously done, and not in self-defense, that appellant was guilty of murder. A willful murder instruction, therefore, should have been given as well as an instruction on manslaughter and self-defense. If the appellant used no more force than appeared to him to be necessary to avoid the unlawful arrest, he was entitled to an acquittal. If there should be evidence on another trial that appellant committed a public offense in the presence of the officers, the instructions as given appear to be without error. The basic error in the instructions is that there was no evidence in the record showing that appellant committed an offense in the presence of the officers.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.