### STATE v. PHILLIP RAY AND OTIS CHASE.

(Filed 5 January, 1938.)

**1. Criminal Law §§ 48b, 81c—Where evidence competent for one purpose is properly restricted by court, its admission is not prejudicial.**

Questions asked defendants' witnesses on cross-examination tended to impeach the witnesses and also to discredit defendants, who did not go upon the stand. The trial court cautioned the jury that the evidence could be considered only for the purpose of impeaching the witnesses, if it did so, and should not be considered as evidence against the defendants. *Held:* The fact that the jury heard the words discrediting defendants cannot be held prejudicial, since under our rules, where evidence is competent for one purpose and not for another, and its admission is properly restricted by the trial court upon request, it must be presumed that the jurors are men of character and intelligence sufficient to understand and comply with the instructions of the court.

**2. Homicide § 20: Criminal Law § 29b—**

Evidence that defendant was arrested for shooting at deceased a week before the encounter in which defendant fatally shot deceased, *held* properly admitted, the prior offense being connected with the offense charged in the bill, and being competent to show the relations between the parties, and intent and malice on the part of defendant.

**3. Criminal Law §§ 51, 81c—Court's instruction in regard to improper remarks of counsel held sufficient in this case.**

Counsel for the prosecution in the argument to the jury remarked upon the physical appearance of one of defendants. The court immediately stated, in the hearing of the jury, that the remark was improper. *Held:* The failure of the court to instruct the jury that they should not consider the remark cannot be held prejudicial, the defendant being in the immediate view and presence of the jury, and there being no request that the court further caution or instruct the jury in regard to the remark.

**4. Same—Held: Court sufficiently instructed jury in regard to remark of counsel upon failure of defendants to take the stand.**

Counsel for the prosecution in the argument to the jury remarked upon defendants' failure to testify in their own behalf. The court stated in the

jury's hearing that the remark was improper, and instructed them in the charge that the failure of defendants to testify should not be considered against them. No further or additional caution or instruction was asked by defendants. *Held:* An exception to the remark cannot be sustained.

**5. Criminal Law § 52b—**

On a motion to nonsuit, the evidence must be considered in the light most favorable to the State.

**6. Homicide § 25—Evidence that defendant aided and abetted codefendant in perpetration of murder held sufficient for jury.**

The evidence favorable to the State tended to show that defendants were cousins and close companions, that the defendant who fatally shot deceased also shot at deceased a week before the fatal encounter, that the other defendant was present at that time, knew of his expressed intent to kill deceased, and accompanied him on several occasions during the week when he was apparently looking for deceased, and on the day of the homicide accompanied him, both fully armed, for several hours in apparently following deceased, and that after his codefendant and deceased started firing at each other, he attempted to take up a position to the side or rear of deceased until stopped by an order from deceased, and that after the shooting he and his codefendant went to the home of the codefendant. *Held:* The evidence was sufficient to be submitted to the jury upon the question of the defendant's guilt as an aider and abettor in the commission of the crime.

**7. Homicide § 2: Criminal Law § 8—**

One who is present, aiding and abetting, counseling and encouraging another in the commission of a crime, is guilty as a principal.

APPEAL by defendants from *Alley, J.,* at August Term, 1937, of YANCEY. No error.

The defendants were charged with the murder of one James O. Higgins.

Verdict: Guilty of murder in the second degree.

The circumstances of the homicide, according to the evidence offered by the State, were substantially these:

The deceased was instantly killed by a pistol shot fired by the defendant Ray. This occurred on the streets of the town of Burnsville on Saturday, 8 May, 1937. For some reason, not disclosed by the record, there was ill feeling on the part of defendant Ray toward the deceased. On the preceding Saturday, 1 May, at about the same place, there had occurred an altercation between them, in the course of which defendant Ray had fired several shots at the deceased (then apparently unarmed), who dodged behind a car and escaped injury except for a slight abrasion on the hand. At that time Ray said to deceased, "I will kill you," and the next day and at other times during the week made threats against him.

Defendant Chase was present with Ray on the occasion of the first encounter, but it does not appear that he said or did anything at that time. Chase and Ray are first cousins and live near each other in Burnsville. The deceased lived a short distance from town.

There was evidence tending to show that during the time between the preceding Saturday and the day on which the fatal shooting occurred Ray and Chase were constantly together, riding usually in Ray's automobile; that on two occasions, when passing on the road a truck in which deceased usually rode to his work with a highway force, the two defendants stopped and looked in the truck. The deceased was not in the truck on either occasion. Also during that week the two defendants were seen parked in a car near a place on a road where deceased had recently worked. It was further testified by the widow of deceased that some time Wednesday night preceding the homicide she heard, just outside the home where she and deceased were sleeping, voices of two men recognized as those of the defendants, and that some one struck the side of the house and the porch roof heavy blows.

From the record of the evidence before us the immediate circumstances of the homicide appear to be as follows:

On Saturday afternoon, 8 May, the deceased was standing on Main Street in Burnsville, and the defendants in an automobile drove up to the curb near him. Later when deceased was at another place on the street the defendant Ray, alone, drove up to the curb in a few feet of him, then backed off and shortly returned with Chase in the car with him and stopped at the same place. There is no evidence that any words passed between them at that time. A short time later deceased, riding in an automobile with a friend, about the town, met and passed the defendants also riding in an automobile. The automobile in which deceased was riding returned to Main Street and was parked near the intersection of Academy Street, and deceased stopped to talk to a man in a car parked alongside, when the two defendants appeared walking on the sidewalk of Main Street and passed by the place where deceased was standing. Deceased then went upon the sidewalk near the intersection, at the corner of a building, and the defendants stopped in the middle of the intersecting street. The evidence is conflicting as to who spoke first, but hot words soon passed between deceased and Ray, with reference to the occurrence of the preceding Saturday and indicating that both were presently armed and not unwilling to shoot it out. When this talk began Ray, still facing deceased, moved up Academy Street, and defendant Chase moved out across Main Street and towards deceased's side and rear as he stood facing Ray. Deceased then noticed Chase's movement and said to him, "Don't try to get behind me," and Chase replied, "I am not going to." Chase stopped about

the center of the street and does not appear to have said or done anything thereafter before the shooting took place.  Ray was then ten or twelve feet from the deceased, and Chase was fourteen or fifteen feet from Ray, according to a State's witness.  At this juncture two persons who were present went up to both the deceased and Ray and sought to prevent further difficulty, but their efforts for peace were unavailing, and Ray drew his pistol and fired.  Deceased drew his pistol, but it snapped or failed to fire, and he was jerked back around the corner of the building out of the line of fire from Ray by a bystander, but the deceased pulled away from the man and came out beyond the corner and fired at Ray, holding his pistol in both hands.  Ray continued to fire and deceased fell with a bullet through his brain.  In all, four or five shots were fired.

After deceased fell Ray ran up the street, and a few moments later Chase, in Ray's automobile, was seen driving rapidly toward Ray's home.  When Chase was arrested twenty or thirty minutes later in front of his own home the officer found on his person a loaded pistol inside his belt under his coat.

The defendants on the other hand offered evidence tending to show that the deceased was the aggressor, and contended that Ray's shooting was in self-defense.  Neither of the defendants went upon the stand as witnesses.

All the elements of felonious slaying, as well as defendant's contention of self-defense, were fully and correctly presented to the jury in the charge of the court.

There was a verdict of guilty of murder in the second degree as to both defendants, and from judgment imposing prison sentence defendants appealed.

*Attorney-General Seawell and Assistant Attorney-General McMullan for the State.*

*R. L. Whitmire, Charles Hutchins, Watson, Founts & Watson for defendants.*

DEVIN, J.  The appeal presents two questions:

1. Was there error in the admission of incompetent testimony, or in other rulings of the court, sufficient to require a new trial?

2. Was there evidence sufficient to be submitted to the jury of the guilt of defendant Chase?

1. The defendants contend that in the cross-examination of two of defendants' witnesses questions tending to impeach the witnesses were so framed as to discredit and prejudice the defendants in the eyes of the jury.  The witness Honeycutt was asked if he and the two defendants were not "caught in a hotel in Asheville with a crooked woman,"

and the witness Briggs, who is a justice of the peace, was asked if he had not turned the defendants loose every time they were brought before him on any charge, and if he had not turned defendant Ray loose on a charge of felony when witness knew of his own knowledge he was guilty. To this the last named witness replied that he had not done so.

In each instance the court cautioned the jury that this evidence could be considered only for the purpose of impeaching the witness, if it did do so, and that they should not consider it as evidence against the defendants.

This evidence was competent for the purpose of impeaching the witness, though incompetent to discredit the defendants. In this situation involving contradictory rules, to avoid improper use of the evidence, it has been uniformly held that correction lies in the instructions of the presiding judge, when so requested, in order to prevent misunderstanding by the jury and to remove prejudice against the defendant. Wigmore on Ev., sec. 13, and cases cited; *Cooper v. R. R.,* 163 N. C., 150, 79 S. E., 418. It is a well recognized rule of procedure that when evidence competent for one purpose only and not for another is offered it is incumbent upon the objecting party to request the court to restrict the consideration of the jury to that aspect of the evidence which is competent. Rule 21 of this Court; Lockhart on Ev., sec. 19; *Roberson v. Stokes,* 181 N. C., 59, 106 S. E., 151.

Whether impressions received by jurors from the words spoken can be effaced by a mental effort, under the direction of the court, may provoke debate in the realm of psychology, but our system for the administration of justice through trial by jury is based upon the assumption that the trial jurors are men of character and of sufficient intelligence to fully understand and comply with the instructions of the court, and are presumed to have done so. *Wilson v. Mfg. Co.,* 120 N. C., 94, 26 S. E., 629.

The evidence that the defendant Ray was arrested for shooting at the deceased on the Saturday preceding the homicide was connected with the criminal offense charged in the bill, and was competent to show the relations between the parties and intent and malice on the part of the defendant. *S. v. Miller,* 189 N. C., 695, 128 S. E., 1; *S. v. Stancill,* 178 N. C., 683, 100 S. E., 241; Underhill's Crim. Ev. (4th Ed.), pp. 1103, 1107.

The defendants also noted exception to a remark of counsel assisting the prosecution, in addressing the jury, that one of the defendants "has the hardest face I ever looked into." It appears from the record that the court immediately stated in the presence of the jury that the remark of counsel was improper. The defendants, however, contend that the court's failure to instruct the jury not to consider the remark was prejudicial error (*S. v. Murdock,* 183 N. C., 779, 111 S. E., 610), but

we are unable to hold that the jury was misled or influenced by this improper reference to what counsel thought of the physical appearance of one of the defendants who was then in the immediate view and presence of the jury, nor does it appear that the defendants requested the court to caution the jury further. Also, in the argument to the jury by one of counsel for the prosecution, some reference was made to the failure of the defendants to go upon the witness stand, and, upon objection by defendants, the court stated at the time that the remark was improper and in his charge carefully instructed the jury not to consider that fact to the prejudice of the defendants. No further or additional caution or instruction was asked by defendants.

The assignments of error on these grounds cannot be sustained.

We have examined the other exceptions to the rulings of the court and find them without substantial merit.

2. Was the evidence against the defendant Chase of sufficient probative force to warrant its submission to the jury? This defendant in apt time moved for judgment as of nonsuit, and now upon appeal assigns as error the denial of his motion.

All the evidence showed the defendant Ray shot and killed the deceased, and that defendant Chase, though present, did not join in the fatal shooting. The guilt of Chase was predicated upon the view that he was present aiding and abetting Ray, giving him assistance and encouragement, or that the killing was the result of the pursuit of a common design and purpose participated in by both. Is the evidence sufficient to support that view?

Here it appears from the evidence, considered in its most favorable light for the State, as we must do on a motion for nonsuit, that, from the close relationship and association of the two defendants, Chase was fully aware of the attitude of Ray toward the deceased, was present when Ray shot at him the preceding Saturday, heard Ray's expression of his intent to kill him, knew of his purpose to attack him when opportunity arose, accompanied him on several different occasions during the week when they were apparently looking for deceased, and on the day of the homicide was armed and accompanied Ray for several hours in apparently following deceased about the streets of the town, and by his presence gave aid and encouragement to Ray's unlawful purpose.

Just before the shooting began, Chase's movement in the street affords ground for the permissible inference that he was attempting to take a position to the side or rear of the deceased, which would have enabled him to be of assistance to Ray if required. Chase's action evidently led the deceased to so conclude, hence his warning to Chase not to try to get behind him. After the fatal shooting Ray ran one way and Chase drove Ray's car another, but both ways led to Ray's home.

While the defendant's evidence tended to warrant a more favorable aspect of Chase's conduct, the circumstances disclosed by the State's evidence consisted of more than a mere conjecture or suspicion of guilt (*S. v. Prince,* 182 N. C., 788, 108 S. E., 330), and constituted evidence of sufficiently definite probative value to justify its submission to the jury under appropriate instructions from the court. *S. v. McLeod,* 198 N. C., 649, 152 S. E., 895.

The principle is well established that one who, being present, gives aid and comfort, counsel or encouragement to another, in the commission of a crime, is guilty as a principal. *S. v. Cloninger,* 149 N. C., 567, 63 S. E., 154; *S. v. Hart,* 186 N. C., 582, 120 S. E., 345; *S. v. Dail,* 191 N. C., 234, 131 S. E., 574; *S. v. Gosnell,* 208 N. C., 401, 181 S. E., 323.

From a consideration of the entire record, including the full and accurate charge of the court, we conclude that in the trial there was

No error.